IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PARWINDER KAUR,<br><br>              Petitioner<br><br>vs.<br><br>REBECCA ADDUCCI, Direct of Detroit<br>Field Office, U.S. Immigration and<br>Customs Enforcement;<br>KRISTI NOEM, Secretary of the U.S.<br>Department of Homeland Security; and<br>PAMELA BONDI, Attorney General of<br>the U.S., in their official capacities,<br><br>              Respondents. | CASE NO. 4:25-cv-2679<br><br>DISTRICT JUDGE<br>CHRISTOPHER A. BOYKO<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND<br>RECOMMENDATION** |

        This matter is before the Court on Petitioner Parwinder Kaur's petition for writ of habeas corpus, Doc. 1, and motion for issuance of an order to show cause, Doc. 5. In her petition, Kaur challenges her present detention without bond at Mahoning County Justice Center, which began on September 15, 2025. Doc. 1, at 2, 5. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court grant Kaur's petition.

*Factual Background and Immigration Court Proceedings*[1]

The facts regarding Kaur's presence in the United States and the duration of her presence in the United States are not well developed in the parties' briefing, perhaps because not all of those facts are relevant to her challenged detention. So the Court focuses on the facts that resulted in Kaur's current detention.[2]

Kaur is a 25-year-old citizen of India. Doc. 1, at 9. On January 3, 2024, Kaur was taken into custody by border patrol agents at or near Lukeville, Arizona. Doc. 1-5, at 1. At that time, agents noted that Kaur "was apprehended within fourteen days of [her] last entry into the United States and within 100 air miles from the United States / Mexico international boundary." Doc. 1-5, at 2. They also noted that she was "being processed and will be served with [a] [Notice to Appear]." *Id.*

---

[1]    At this stage of proceedings, allegations in the Petition are accepted as true and construed in Petitioner's favor. *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (describing the pleadings standard and applying to the § 2243 stage in a § 2241 petition). In addition, "documents attached to the pleadings become part of the pleadings and may be considered" without converting to summary judgment. *Id.* (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)).

[2]    Exhibits submitted with the Government's briefing demonstrate that Kaur has been living in the United States since 2007 and, though not legally married, participated in a religious ceremony in 2022 with her partner, as well as that she lives with her partner and his parents in Ohio. *See* Doc. 16-1, at 1. These facts, provided by the Government, tend to illustrate that Kaur lived in the United States for an extended period of time before she was taken into custody.

On January 4, 2024, the day after her apprehension, officials issued to Kaur a Notice to Appear ("NTA"), which alleged that she was "an alien present in the United States who has not been admitted or paroled." Doc. 1-6, at 1. The NTA detailed that she was charged and subject to removal under Section 212(a)(6)(A)(i). *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Although the NTA indicated that Kaur was "not admitted or paroled," officials released Kaur from custody, presumably under the parole authority found at 8 U.S.C. § 1182(d)(5)(A), and ordered her to appear before an immigration judge in Cleveland, Ohio, at a hearing set for July 16, 2025. Doc. 1-6, at 1. In other words, Respondents determined that Kaur was not subject to mandatory detention pending her removal proceedings, which was scheduled for approximately 18 months after her apprehension.

On September 15, 2025, immigration agents arrested Kaur while she was attending a master calendar hearing in Cleveland, Ohio. Doc. 1, at 10.

Thereafter Kaur requested a custody redetermination, seeking release on bond pending immigration proceedings. Doc. 1, at 10. On November 6, 2025, an immigration judge denied Kaur's request to be released on bond, stating that "the Court does not have the authority to redetermine bond in this case." Doc. 1-7, at 1. Kaur appealed to the Board of Immigration Appeals ("BIA" or "Board") the immigration judge's determination denying reconsideration for release on bond. Doc. 1, at 10.

On December 18, 2025, the immigration judge issued a decision explaining that, under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), she "did not have jurisdiction over these bond proceedings." Doc. 16-1, at 2. The immigration judge added that "if the Court had jurisdiction to redetermine [Kaur's] bond, the Court finds that [Kaur] is not a danger to the community, and that a $35,000 bond would mitigate any risk of flight." Doc. 16-1, at 2.

*Kaur's habeas petition*

On December 10, 2025, Kaur, through counsel, filed a petition for writ of habeas corpus arguing that, based on the events described above, she "will remain detained without a bond hearing in violation of her Due Process rights under the United States Constitution without the possibility of bond from the Immigration Court or review of that denial of jurisdiction by the BIA. Thus, [Kaur] is being held without the opportunity to be heard regarding the lawfulness of her detention." Doc. 1, at 2.

One week later, on December 17, 2025, Kaur filed a motion for issuance of an order to show cause, asking the Court to direct the Respondent to show cause why a writ for habeas corpus should not be issued. Doc. 5. The same day, the Court issued an order, which in substance granted Kaur's motion requesting a show cause order by directing the Respondents to respond, as well as instructing Kaur to take certain actions regarding service. Doc. 6. Neither party complied with the deadlines or directives in the Court's order. So the

Court scheduled a hearing. Doc. 11. During the hearing, the parties explained their non-compliance, the Court accepted their responses, and the Court established an expedited briefing schedule regarding Kaur's petition. Doc. 15.

The parties have now fully briefed their positions on Kaur's petition, *see* Docs. 16, 17, and for the reasons explained I recommend that the District Court grant Kaur's petition.

**Legal Standard**

Under Section 2241, the District Court may grant a writ of habeas corpus to any person who demonstrates that she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The longstanding consensus is that a person challenging the lawfulness of detention may pursue redress through a writ of habeas corpus. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (observing that "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Nevertheless, federal district courts are limited in their authority to grant relief under Section 2241 in immigration cases. *See, e.g., Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) (finding that a district court lacks jurisdiction to consider removal orders).

Although the Court lacks jurisdiction over issues such as challenges to the legality of a removal order, *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th

Cir. 2018), it does have jurisdiction to consider whether a noncitizen is lawfully detained. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the "'appropriate remedy to'" determine the legality of a person's custody) (quoting 3 Commentaries on the Constitution of the United States § 1333, p. 206 (1833)).

**Discussion**

*1. The Court Has Jurisdiction Over Kaur's Petition.*

As a threshold matter, Respondents argue that this Court lacks jurisdiction to review Kaur's petition based on two statutory provisions. *See* Doc. 16, at 12–15.[3] Although the reasons supporting jurisdiction are discussed below at length, it bears noting at the outset that it is questionable whether any of the provisions in Section 1252 would apply to Kaur since that statute concerns "Judicial review of orders of removal," and the record indicates no order of removal has been issued.

Respondents argue that "Section 1252(g) categorically bars jurisdiction over '*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien.'" Doc. 16, at 12 (quoting 8 U.S.C. § 1252(g)). Second, Respondents argue that "[u]nder § 1252(b)(9), 'judicial review of all questions of law … including interpretation

---

[3]    The Court references the CM/ECF-generated pages numbers at the top of Respondents' filing.

and application of statutory provisions … arising from any action taken … to remove an alien from the United States' is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order." Doc. 16, at 12–13 (citing 8 U.S.C. § 1252(b)(9)).

Respondents are mistaken. *See Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Zadvydas*, 533 U.S. at 688).

First, Respondent's argument that Section 1252(g) *categorically* bars Kaur's claims is unpersuasive. Section 1252(g) addresses a district court's jurisdiction over certain claims raised by non-citizens and provides in relevant part that:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Based on this statute, Respondents argue that "the Secretary of Homeland Security's decision to *commence removal proceedings*, includes the decision to detain an alien pending such removal proceedings." Doc. 16, at 12. The Respondent's position, however, ignores the Supreme Court's caution that the jurisdictional limits detailed in Section 1252(g) have a "narrow" reach, and apply only to "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of*

7

*Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020) (explaining that the Supreme Court has "previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes a 'general jurisdictional limitation'") (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).

Indeed, for over 25 years, the Supreme Court has expressed that Section 1252(g) narrowly precludes from judicial review the three discrete categories listed in subsection (g), which  constitute "the initiation or prosecution of various stages in the deportation process." *American-Arab Anti-Discrimination Comm*, 525 U.S. at 483. Outside of these three categories, the Supreme Court noted that there are "many other decisions or actions that may be part of the deportation process," such as "the decisions to open an investigation, to surveil the suspected violation, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id*. at 482.

A plurality of the Supreme Court has more recently affirmed the narrow construction of Section 1252(g). *See Jennings v. Rodriquez*, 583 U.S. 281, 294 (2018) (plurality opinion). The three-justice plurality in *Jennings*, reiterated that the Court "did not interpret [the phrase 'arising from'] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the

Attorney General. Instead, [the Court] read the language to refer to just those three specific actions themselves." *Id.* at 294.

Here, Kaur's claims do not challenge Respondents' efforts to commence proceedings, adjudicate cases, or execute removal orders. Instead, Kaur asserts that her continued detention, under a mandatory detention regulation, violates her Fifth Amendment due process rights and that, in the first instance, she has been erroneously subjected to that mandatory detention regulation. *See* Doc. 1, at 2. The immigration judge's decision to detain Kaur without possibility of release on bond arising out the application of a mandatory detention statute is not tied to a decision to *commence* removal proceedings. Kaur's "detention does not arise from the government's 'commencement of proceedings,' which begins with the filing of an NTA in an immigration court." *Mahdawi v. Trump*, 136 F.4th 443, 450–51 (2d Cir. 2025) (quoting *Otzurk v. Hyde*, 136 F.4th 382, 396–97 (2d Cir. 2025)).

For the reasons stated, including the plain language of Section 1252(g) and the Supreme Court's interpretation of that language, Respondent's first jurisdictional argument fails. *See Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023) ("there is no way to read [Section 1252(g)'s] legislative history as evincing 'a clear statement of congressional intent to repeal habeas jurisdiction' over all detention claims. To the contrary, § 1252(g) was passed with the understanding that collateral challenges to the legality of a petitioner's detention would not constitute 'cause[s] or claim[s]' that 'aris[e]

from the decision or action by the Attorney General to ... execute removal orders.'") (citation omitted).

Second, Respondent argues that Section 1252(b)(9) bars this Court's consideration of Kaur's claim. Under Section 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under Section 2241 of Title 38 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

The Supreme Court has "described § 1252(b)(9) as a 'zipper clause' which "consolidate[d] 'judicial review' of immigration proceedings into one action in the court of appeals." *St. Cyr*, 533 U.S. at 313.[4] But the Court has made clear that "it applies *only* '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id*. (emphasis added). As a result, "§ 1252(b)(9) does not

---

[4]     Congress amended the Immigration and Nationality Act in response to *St. Cyr*, to eliminate habeas as a method to review final orders of removal for criminal aliens. *See* REAL ID Act of 2005, Pub. L. 109-13. Div. B, § 106, 119 Stat. 231; *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). Importantly, although "the Real ID Act eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal," it "did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006).

clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole."[5] *Id.* at 314.; *see also Ozturk*, 136 F.4th at 399.

Instead of acknowledging *St. Cyr*, Respondents look to Justice Thomas's concurrence in *Jennings* to support their assertion that "[t]he fact that [Kaur] is challenging the basis upon which she is detained is enough to trigger § 1252(b)(9) because 'detention is an "action taken … to remove" an alien.'" Doc. 16, at 14. But Kaur is not seeking review of a final order of removal, as she is not subject to one. Instead, she challenges the constitutionality of and the purported mandatory nature of her detention without opportunity for bond.

Based on the Supreme Court's interpretation of Section 1252(b)(9), the legislative history of that provision, and other federal court's interpretations of the same, Respondent's arguments do not provide a basis to find the Section 1252(b)(9)'s jurisdictional-bar applies to Kaur's petition.

Lastly, the Respondents dispute Kaur's assertion that Section 1252(e)(2) conveys jurisdiction. *See* Doc. 1, at 3. Given that subsections (b)(9) and (g) don't bar this Court's review, this issue is not directly relevant. But for the sake of

---

[5]     In support of this aspect of their argument, Respondents cite a portion of *Jennings* that was joined only by a three-justice plurality. *See* Doc. 16, at 14. Even so, that portion "of Jennings does not support the conclusion that § 1252(b)(9) bars jurisdiction over habeas challenges to detention." *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025). Rather that portion "rejected the government's 'expansive interpretation of § 1252(b)(9).'" *Id.*

completeness, Section 1525(e)(2) "*limits* the review that an alien in expedited removal may obtain via a petition for a writ of habeas corpus." *Thuraissigiam*, 591 U.S. at 111 (emphasis added). The problem with this aspect of Kaur's petition is that Section 1225(b)(1) concerns expedited removal proceedings, *see id.*, 591 U.S. at 109, and Kaur's own evidence shows that she is not in expedited removal proceedings, *see* Doc. 1-6 (NTA placing Kaur in "240 proceedings); *see also Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *4 (N.D. Ohio Aug. 25, 2025) (explaining the difference between expedited and standard removal proceeding). So Section 1252(e)(2) does not apply.

For all of the reasons stated, the Court should find that it possesses jurisdiction to consider Kaur's Petition challenging the constitutionality of her detention.

### 2. *Kaur Is Excused From Administrative Exhaustion*

Having concluded that the Court has jurisdiction to consider Kaur's claims, the next issue is whether Kaur has exhausted her available administrative remedies, and, if not, whether she is excused from exhaustion.

"When 'Congress has not clearly required exhaustion, sound judicial discretion governs' whether or not exhaustion should be required." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). "[E]xhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[],'if the 'administrative

remedies are inadequate or not efficacious," or "where pursuit of administrative remedies would be a futile gesture." *Id*. at 594 (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981)). "Additionally, '[e]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.'" *Id*. (quoting *Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006)).

Here, Respondents' position that exhaustion should apply appears to be based simply on the assumption that Kaur was required to wait until the Board issued a final administrative decision before filing her petition. Doc. 16, at 16. Respondents, however, ignore Kaur's waiver and futility arguments. *See* Doc. 1, at 5–9. Respondents' have thus forfeited any argument that waiver or futility should not excuse the prudential exhaustion requirement.[6]

Moreover, Kaur urges that "waiver [of the exhaustion requirement] is appropriate when the interest of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks." Doc. 1, at 7. Again, Respondents do not address Kaur's waiver argument. *See* Doc. 16, at 15–16. The Court is thus left to consider Kaur's unopposed arguments in favor of waiving the exhaustion requirement. In particular, Kaur's argument that exhaustion would be futile,

---

[6]    It may be, as Respondents assert, that some Courts in this District have dismissed petitions for failure to exhaust. *See* Doc. 16, at 15. But that fact would only matter if Respondents had not forfeited challenges to Kaur's argument that the prudential exhaustion requirement should not apply.

considering the Board's recent decision in *Matter of Yajure Hurtado*, is strong. *See e.g.*, Doc. 1, at 2, 7 (asserting that exhaustion would be futile considering recent Board holdings that have dismissed appeals based on the Board's interpretation that it lacks jurisdiction over appeals of custody redetermination in cases like Kaur's). The immigration judge's December 18, 2025 decision and order highlight the futility of administrative exhaustion in Kaur's circumstances. *See* Doc. 16-1.

Considering the predictable outcome of Kaur's appeal to the Board, exhaustion is futile. And dismissal on exhaustion grounds would operate to prolong any alleged Due Process violation, which, as is discussed below, Respondents do not contest. This delay would impose further hardship on Kaur and weighs against requiring administrative exhaustion. *See Shalala v. Illinois Counsel*, 529 U.S. 1, 13 (2000) ("Doctrines of 'ripeness' and 'exhaustion' contain exceptions, however, which exceptions permit early review when, for example, the legal question is 'fit' for resolution and delay means hardship[.]"). Indeed, as Kaur highlights, other courts have found that such delay pending appeal would directly "result in the very harm that the bond hearing was designed to prevent[.]" *See* Doc. 1, at 8.

For all of the reasons stated, the Court should waive application of the prudential exhaustion requirement in this case and proceed to consideration of the merits of Kaur's Petition.

> *3. Mandatory detention under 8 U.S.C. § 1225(b)(2) does not apply to Kaur because she is subject to discretionary detention under 8 U.S.C. § 1226(a).*

The parties dispute whether Kaur falls under Section 1225(b)(2) or Section 1226(a). They agree, however, that Section 1225 and 1226 apply to different classes of aliens. *See* Doc. 1, at 12; Doc. 16, at 21.

Under Section 1225, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings*, 283 U.S. at 287. There are two categories of applicants for admission described in Section 1225, "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* As relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2) (emphasis added). By contrast, under Section 1226(a) "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). And immigration authorities "may release the alien on … bond … or … conditional parole." 8 U.S.C. § 1226(a)(2)(A), (B). Further, 8 U.S.C. § 1229a sets out the manner in which removal proceedings should occur but does not impose a detention requirement.

Respondents argue that Kaur is subject to mandatory detention based on application of Section 1225(b)(2). Specifically, the Respondents assert that:

> §1225 is the applicable detention authority for all applicants for admission—both arriving aliens and aliens present without admission alike, regardless of whether the alien was initially processed for expedited removal proceedings under 8 U.S.C. § 1225(b)(1) or placed directly into removal proceedings under 8 U.S.C. § 1229a—and "[b]oth [8 U.S.C. § 1225(b)(1) and (b)(2)] mandate detention ... throughout the completion of applicable proceedings," *Jennings*, 283 U.S. at 301–03, IJs do not have authority to redetermine the custody status of an alien present without admission.

Doc. 16, at 21. In other words, Respondents' current position is that Kaur is (1) an alien present without admission, (2) subject to removal proceedings detailed in 8 U.S.C. § 1229a, (3) both an applicant for admission and an alien seeking admission, and (4) as a result of the preceding three qualities, subject to mandatory detention and "ineligible for a bond redetermination hearing before an [immigration judge]." Doc. 16, at 23. Respondents' assertion that detention is mandatory is based on the language "shall be detained" found in Section 1225(b)(2). *See* Doc. 16, at 20–23.

Kaur does not dispute that she entered the United States on or about January 3, 2024, without presenting herself at a point of entry and without having been admitted after inspection by an immigration officer. *See* Doc. 1-5, at 2. The NTA, attached to Kaur's petition, further illustrates that she is alleged to be "an alien present in the United States who has not been admitted or paroled." Doc. 1-6, at 1. Nevertheless, Kaur's processing disposition was

16

"Notice to Appear Released," *see* Doc. 1-5, at 1, and she was not detained for over 18 months before she appeared at an immigration hearing and was apprehended in September 2025.

Indeed, at this Court's Show Cause Hearing, the Court addressed the Respondents' seemingly contradictory conduct when it asked: "Ms. Kaur was paroled into the United States under [8 U.S.C. §] 1182(d)(5)(A),[7] right?" Show Cause Hearing 1/5/2026, at 10:10:20AM–10:11:51AM. Respondents did not clearly answer whether Kaur was specifically paroled but confirmed that she was not detained during the time between January 2024 and September 2025. *Id*. Respondents did, however, confirm that Kaur was not subjected to mandatory detention when she was initially apprehended. *Id*. The Court further questioned the change between the Government's conduct in January 2024 and its conduct in September 2025, which Respondents explained was based on the Board's decision in *Matter of Yajure Hurtado*. *Id*.

The issue before the Board in *Matter of Yajure Hurtado*, however, was whether immigration judges have the "authority to hold a bond hearing for an alien present in the United States who has not been admitted after inspection."

---

[7]    Even if Kaur were released on parole, Respondents aptly point out that the Supreme Court in *Jennings* found that the decision to release on parole under Section 1182(d)(5)(A) is within the discretion of the Department of Homeland Security. *See* 583 U.S. at 288. So Kaur's release on parole does not affect the analysis of whether Kaur has been classified as an alien  subject to Section 1225 or 1226.

29 I. & N. Dec. at 216. So that decision does not fully explain the reason that Kaur was apprehended.

In any event, in their return of writ, Respondents elaborate on their position that immigration judges are bound by *Matter of Yajure Hurtado* to impose mandatory detention in removal proceedings conducted under Section 1229a. *See* Doc. 16, at 20. Additionally, Respondents point to language in *Jennings*: "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 301–03; *see* Doc. 16, at 21.

Respondents, however, omit another portion of *Jennings*, in which the Court said, that "[w]hile the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer. As noted, *§ 1226 applies to aliens already present in the United States*." 583 U.S. at 303 (emphasis added). So although it appears that Kaur could be subject to mandatory under Section 1225 there are plainly other statutory provisions applicable to this matter.

In particular, Kaur argues that she falls under Section 1226(a) and is thus eligible for discretionary bond or parole. To this end, she asserts that Section 1225(b)(2) requires "*both* an 'applicant for admission' who is *also* 'seeking admission,'" Doc. 17, at 6 (emphasis in original). Indeed, another unit of this Court recently explained that although Section 1226(a) provides generally that an alien may be released on bond, Section 1225(b)(2) provides a "carveout" for individuals "who are (1) either present in the United States

18

without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer." *See Chavez v. Dir. of Detroit Field Off*, No. 4:25-cv-2061, 2025 WL 3187080, at *4 (N.D. Ohio Nov. 14, 2025). Respondents make the conclusory assertion that Kaur is "an alien present without admission and, consequently, an applicant for admission," Doc. 16, at 17, but they say nothing about how she could be an alien "seeking admission." Instead, Respondents' position conflates the terms "applicant for admission" and "seeking admission" by using the phrase "applicant for admission seeking admission"—which does not appear in any of the relevant statutes—to describe Kaur. *See* Doc. 16, at 17. Based on the Respondents' reading, the carve-out becomes a catch-all.

It is undisputed that Kaur is an applicant for admission, but Respondents do not offer any convincing argument that she is "seeking admission" for purposes of Section 1225(b)(2). *See* Doc. 16, at 12 (citing Board decisions to support the position that Kaur should be considered "seeking admission"). Indeed, "[t]he Supreme Court understood § 1225 to operate 'at the Nation's borders and ports of entry' and involve the 'inspection of immigrants by immigration officers.'" *Chavez*, 2025 WL 3187080, at *5 (quoting *Jennings*, 583 U.S. at 287). Following this logic, courts in the Sixth Circuit have held that the plain language of Section 1225(b)(2) applies to aliens *arriving* in the United

States. *Id.* (citing *Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at * 7 (E.D. Mich Oct. 17, 2025)).

Tellingly, immigration authorities in Kaur's NTA alleged, by checking a box, that she is: "an alien *present* in the United States who has not been admitted or paroled." Doc. 1–6, at 1 (emphasis added). Authorities did not check the box immediately above that box, which provides "You are an arriving alien." Respondents' choice amounts to a judicial admission that Kaur is *not* an arriving alien. *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (explaining that allegations in a Notice to Appear, like those in a complaint, are judicial admissions); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are judicial admissions by which [Plaintiff] was bound throughout the course of the proceeding") (internal quotation marks and alterations omitted)); *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).

Under the plain text of Kaur's NTA, Kaur was simply passively present in the United States without being admitted or paroled—and nothing more. Further bolstering that Kaur was not "seeking admission," as is required for Section 1225(b)(2) to apply, the Respondents acknowledge that Kaur has lived in the United States since 2007. Doc. 16-1, at 1. Indeed, "seeking" implies action, meaning it "requires something more than just passively being present

in the United States." *Chavez*, 2025 WL3187080, at *5 (citations omitted). Despite the fact that Kaur was apprehended near the United States-Mexico border, it is clear to all involved that Kaur has lived in the United States for years before being detained. "[A]s an immigrant arrested and detained while 'already in the country[,]' [Kaur] falls more aptly within § 1226a's default rule." *Chavez*, 2025 WL 3187080, at *4; *see also id*. at *7, n.6 (collecting cases).

Respondents also assert that "Section 1226(a) does not [] confer the right to release on bond; rather both DHS and IJs have broad discretion in determining whether to release an alien on bond as long as the alien establishes that he or she is not a flight risk or a danger to the community." Doc. 16, at 25. While Section 1226(a) may not convey a "*right* to release on bond," that section *does* make available discretionary release on bond or parole, which Kaur claims she was denied. The Respondents do not dispute that the immigration judge found that she was precluded from conducting a bond hearing. *See* Doc. 16. So Respondents' point regarding discretion for release on bond versus a right to bond is unclear.

What is clear is that Section 1226(a) gives immigration judges broad discretion to permit or deny release on bond. And Section 1226(A) "makes no distinction between admitted and unadmitted immigrants." *Chavez*, 2025 WL 3187080, at *5. The key is that Section 1226(a) makes such discretion available, rather than imposing mandatory detention.

Here, the immigration court found that it did not have any discretion to conduct a bond hearing or reconsider the denial of bond because the court erroneously applied Section 1225(b)(2) to find that detention was *mandatory*. As a result of the Respondents' misclassification of Kaur, she has been erroneously deprived of something she is statutorily entitled to. This deprivation is particularly harmful where, as here, the immigration judge explicitly found that if she had such discretion, then she would have found Kaur eligible for bond. *See* Doc. 16, at 33.

One final note on this point. Respondents focus on the phrase "shall be detained" in relevant statutes and regulations to basically argue that the Government's hands are tied. *See* Doc. 16, at 18, 20, 21. But it has long been the case that, in the prosecutorial or agency enforcement context, the term "shall" can mean "may" or suggest discretion. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 760–61 (2005); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Richbourg Motor Co. v. United States*, 281 U.S. 528, 534 (1930); *Gratton v. Wildasin*, No. 21-5824, 2022 WL 3969833, at *2 (6th Cir. June 22, 2022). So *shall* does not necessarily carry the weight that Respondents suggest.

Because Kaur should have been, but was not, considered for release on bond under Section 1226(a), the Court should grant her petition and order the immigration court to conduct a bond hearing.

4. *The Government Forfeited Any Opposition To Kaur's Due Process Claim.*

Even if the District Court finds that Kaur is subject to mandatory detention under Section 1225(b)(2), it should grant her petition and direct the immigration court to conduct a bond hearing under the Fifth Amendment Due Process Clause. The Fifth Amendment right to due process applies to all persons, including noncitizens, who are present in the United States. *Zadvydas*, 533 U.S. at 693.

Generally, Kaur claims that she her continued detention absent a bond hearing represents a violation of her right to due process. Doc. 1, at 2, 6, 17–18. The Government, however, offers no discernable response to Kaur's due process claim. *See* Doc. 16 (omitting any response or reference to the authorities or arguments Kaur raised in her petition pertaining to due process violations based on denial of a bond hearing). So the Government has forfeited any opposition to Kaur's due process argument and, on that basis alone, the Court could find that she is entitled to habeas relief. As a result, even if the Government were correct that Kaur should be subject to mandatory detention, the Court should grant Kaur the relief she seeks.

Further, the merits of Kaur's due process claim under the applicable balancing test justify relief. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (66h Cir. 2020) (applying the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Under this test the Court weighs: (1) the private interest that will be affected by the official action; (2) the risk of

erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *See Mathews*, 424 U.S. at 335.

First, Kaur's liberty is at stake. Second, the Government's position has been inconsistent. As discussed above, the immigration court acknowledged, and the Government does not dispute, that Kaur has lived in the United States since 2007. *See* Doc. 16-1, at 1. This fact is supported by the Kaur's NTA, which omits any allegation that she is an arriving alien. Doc. 1-6, at 1. Kaur was previously released and permitted to go about living for over 18 months in the United States during the pendency of her immigration proceedings before being detained in September 2025. These contradictions tend to show that Kaur is at risk of being erroneously deprived of her freedom. The second factor thus weighs in her favor.

Lastly, based on the information described throughout this recommendation, the Government has not and likely cannot show that it has any significant interest in Kaur's continued detention. Indeed the fact that the Government's released Kaur for over 18 months and the immigration judge's statement that she would release Kaur on bond, weigh strongly against any potential argument by the Government regarding this third factor.

Based on the Government's forfeiture of any challenge to Kaur's due process claim and on the merits of Kaur's due process claim, I recommend that

24

her Petition be granted, and that the immigration court be ordered to conduct a bond hearing.

**Conclusion**

Because Section 1225(b) is inapplicable to Kaur, Respondents may not now impose mandatory detention against her pending her removal decision. I recommend that the District Court grant Kaur's petition and require the immigration court to conduct a hearing to determine whether, consistent with this Court's determination, Kaur is entitled to discretionary bond under Section 1226(a).

Dated: January 14, 2025

*/s/James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).