UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PARWINDER KAUR,** | ) | **CASE NO. 4:25-CV-02679** |
| | ) | |
| **Petitioner,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **KEVIN RAYCRAFT,** Acting Director | ) | |
| of Detroit Field Office, United States | ) | |
| Immigration and Customs Enforcement | ) | |
| and; | ) | |
| **MARKWAYNE MULLIN**, | ) | |
| Acting Secretary of the United States | ) | |
| Department of Homeland Security | ) | |
| and; | ) | |
| **PAMELA BONDI,** Attorney General | ) | |
| of the United States, | ) | **<u>Memorandum of Opinion and Order</u>** |
| | ) | |
| **Respondents.** | ) | |

**<u>CHRISTOPHER A. BOYKO, J.</u>:**

This matter is before the Court on Petitioner Parwinder Kaur's Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2241.  (ECF #1).  On January 14, 2025, Magistrate Judge

James E. Grimes, Jr. issued a Report and Recommendation ("R&R") recommending that this

Court grant the Petition.  (ECF #18).

Respondents Kevin Raycraft[1], Acting Director of the Detroit Field Office of United States Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Acting Secretary[2] of the United States Department of Homeland Security; and Pamela Bondi, Attorney General of the United States (collectively, "Respondents") filed a timely objection.  (ECF #19).

## I.  BACKGROUND

The R&R set forth a thorough factual and procedural history of this matter.  (*See* ECF #18).  For the sake of brevity, the Court only briefly summarizes the facts relevant to Petitioner's current detention.

On January 3, 3024[3], Petitioner, a citizen of India, was taken into custody by immigration agents.  (ECF # 18 pg. 2-4.).  On January 4, 2024, immigration officials issued a Notice to Appear ("NTA"), which classified Petitioner as "an alien present in the United States who has not been admitted or paroled."  (ECF #1-6).  Petitioner was released from custody, with an appearance date of July 16, 2025, approximately 18 months after her initial apprehension.  (ECF # 18 pg. 2-4).

On September 15, 2025, Petitioner appeared for a master calendar hearing before the Immigration Court in Cleveland, Ohio, where she was subsequently taken into custody by immigration agents.  (*Id.*).  Thereafter, Petitioner requested a custody redetermination, seeking

---

[1] Rebecca Adducci, former Director of the Detroit Field Office, ICE, was an original respondent and sued in her official capacity.  (ECF # 1).  Kevin Raycraft is Acting Director of the Detroit Field Office, ICE and is automatically substituted for Rebecca Adducci under Fed R. Civ. P. 25(d).

[2] Kristi Noem, former Secretary of the United States Department of Homeland Security, was an original respondent and sued in her official capacity.  (ECF # 1).  On March 5, 2026, Kristi Noem was removed by President Donald Trump via his verified Truth Social account and Markwayne Mullin was appointed as her replacement. https://truthsocial.com/@realDonaldTrump/posts/116178030946996760.  (last visited March 10, 2026).  The Court has substituted for Kristi Noem under Fed R. Civ. P. 25(d).

[3] Petitioner filed a Notice of Correction of Fact to R&R regarding Petitioner's date of entry into the United States.  (*See* ECF # 20).  While it does not impact the Court's analysis, the Court acknowledges and incorporates herein the correction that Petitioner was in country for 14 days before being apprehended on January 3, 2024.

release on bond pending completion of her immigration proceedings. (*Id.*). On November 6, 2025, an immigration judge denied that request, stating, "the court does not have the authority to redetermine bond in this case." (*Id.*). Petitioner appealed to the Board of Immigration Appeals ("BIA"), which affirmed the decision on December 18, 2025, holding that the immigration court "did not have jurisdiction over these bond proceedings." (*Id.*). The immigration judge nevertheless noted, "if the court had jurisdiction to redetermine [Kaur's] bond, the court finds that [Kaur] is not a danger to the community and that a $35,000 bond would mitigate any risk of flight." (*Id.*).

The immigration court's asserted lack of jurisdiction comes in the wake of a September 5, 2025, BIA decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which proclaimed – for the first time in immigration history – that any person who entered the United States unlawfully and is later detained by immigration authorities is categorically ineligible for release on bond. Prior to *Matter of Yajure Hurtado*, the BIA's position allowed immigration judges discretion to grant bond where the individual lacked a disqualifying criminal history and the judge was satisfied after a hearing that the person was not a danger to the community or a flight risk.

That shift in interpretation coincided with a policy change issued on July 8, 2025, when Immigration Customs and Enforcement Agency ("ICE") adopted internal "interim guidance,"[4] revising its decades-long interpretation of which noncitizens remained eligible for release on bond. Before July 8, 2025, a noncitizen in Petitioner's position would have been subject to detainment pursuant to 8 U.S.C. § 1226 and eligible for release from custody during removal

---

[4] American Immigration Lawyers Association, ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA (July 8, 2025) https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have been historically treated." (last visited March 9, 2026).

proceedings.  After the guidance was implemented, such individuals were instead treated as detained pursuant to 8 U.S.C. § 1225, which mandates near-automatic detention and provides no opportunity for bond.  This interpretation was upheld by the BIA in *Matter of Yajure Hurtado*.

On December 10, 2025, Petitioner filed the instant Petition on the basis that her continued detention without a bond hearing violates both the Due Process Clause of the Fifth Amendment and the plain language of the Immigration and Nationality Act ("INA").  (*See* ECF #1).  On December 17, 2025, Petitioner moved for an order to show cause why a writ of habeas corpus should not be issued and the Magistrate Judge filed an order that same day.  (ECF # 18 pg. 4).  After both parties failed to comply with the court's deadlines, a hearing before the Magistrate Judge was scheduled.  (*Id*.)   Following the hearing, the matter was fully briefed and the Magistrate Judge issued the R&R.  (*See* ECF # 18).  The matter is now before this Court.

## II.      STANDARD OF REVIEW

### A.      Review of Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *l (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party." (citations omitted)); Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge.  An

'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections [to a magistrate judge's report and recommendation] does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citation omitted)).  The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks.  The duplication of time and effort wastes judicial resources rather than saving them and runs contrary to the purposes of the Magistrates Act. *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Aldrich*, 327 F. Supp. 2d at 747-748.

 After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.      28 U.S.C. § 2241**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."

While this generally includes challenges by noncitizens in immigration-related matters, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), Congress has statutorily limited the specific

circumstances under which district courts may issue writs for noncitizens detained in such matters.

### III.   ANALYSIS

The Magistrate Judge recommends that the Petition be granted.  Respondents object to the Magistrate Judge's conclusion that the Petition should be granted, on three grounds: (1) the Magistrate Judge erred in determining that the Court has jurisdiction to review the petition; (2) § 1225 is inapplicable to Petitioner; or (3) the Magistrate Judge erred in determining Petitioner's detention violates the Due Process Clause.  (*See* ECF # 19).

The Court finds no error in the Magistrate Judge's conclusions.  Respondents' objections rely on alternative and expansive interpretations of statutes that are unsupported by their plain language, distort their structure and contradict Supreme Court precedent.

Accordingly, for the reasons set forth below, Respondents' objections are **OVERRULED** and the Court **ADOPTS AND ACCEPTS** the R&R, including as to the Court's ultimate resolution of the Petition.

### A.  Subject Matter Jurisdiction under § 1252(g) and/or § 1252(b)(9)

The Court begins by addressing the issue of jurisdiction to review the Petition.

As a threshold matter, the Court wants to clarify: Petitioner's habeas petition is not directed at her removal proceedings, she is not challenging matters that would merge into a final order of removal, nor is she asking the Court to decide matters related to her pending immigration claims.  Petitioner challenges the legality of her confinement itself, a matter which this Court clearly has jurisdiction to decide.  *Dornveil v.Noem*, No. 4:25-CV-1809, 2025 U.S. Dist. LEXIS 187405, 2025 WL 2720786, at *3 (N.D. Ohio Sept. 24, 2025).

### 1. § 1252(g)

6

The Magistrate Judge determined that § 1252(g) does not "categorically" bar the Court's jurisdiction to grant habeas relief in all immigration-related proceedings as suggested by Respondents.

The Court declines to undertake a full analysis of Respondents' objection as to the first jurisdictional issue as the "objection" merely restates, almost verbatim, their argument previously raised in their Return of Writ.  (ECF # 16 pg. 2).  Rather than presenting new authorities or arguments, Respondents simply disagree with the Magistrate Judge's conclusion that the Court has jurisdiction to review the Petition under § 1252(g).  (*Id.*).  After doubling down on contentions already rejected by the Magistrate Judge, they further mention: "Consistent with existing case law, Petitioner is, however, challenging the decision to commence proceedings against her, because absent the commencement of proceedings, Petitioner would not be detained. Judicial review of Petitioner's claim, therefore, is barred by § 1252(g)."  (ECF # 19 pg. 3).  The Court and the Magistrate Judge found no assertions from the Petitioner that she is, "disputing the decision to commence proceedings against her."  (*Id.*).  The Court is astonished by Respondents misunderstanding the nature of a habeas petition - it is incontrovertible that a habeas petition is directed at the legality of the confinement itself; exactly the issue here.

Respondents' nonsensical summary provides no support of their belief that she is challenging the decision to commence proceedings, therefore barring jurisdiction.  Respondents offer no new or "consistent" authority, nor any "existing case law" to substantiate this position. Rather, they reiterate their contention that despite Supreme Court precedent and the overwhelming consensus of lower courts that § 1252(g) does not divest this Court of jurisdiction, the Magistrate Judge was erroneous.

The Court reminds Respondents that a recitation of arguments previously presented is insufficient and has the same effect as a failure to object.  In an effort to save their own time, Respondents wasted judicial resources by effectively duplicating review, running contrary to the purposes of the Magistrates Act.  *Aldrich*, 327 F. Supp. 2d at 748.  The Court will consider this objection waived.

Regardless of Respondents' position, the Court agrees with the Magistrate Judge's analysis that § 1252(g) does not bar jurisdiction.  The Court beings with the relevant text.

§ 1252(g) provides:

that [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The plain language of § 1252(g) "limits jurisdiction as it relates to claims arising from the commencement of removal proceedings, adjudication of such cases, or the execution of removal orders—even when jurisdiction would otherwise be proper under federal question jurisdiction, mandamus jurisdiction, or 'any other provision of law[,]'"including habeas relief.  *Bartolon v. Bondi*, 2025 U.S. Dist. LEXIS 261729, 2025 WL 3674604, at *3 (S.D. Ohio Dec. 18, 2025) (citing *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010)).  However, the Supreme Court has "cautioned that § 1252(g) does not cover 'the universe of deportation claims,' but is much narrower[.]"  *Puerto- Hernandez v. Lynch*, 2025 U.S. Dist. LEXIS 213732, 2025 WL 3012033, at *3 (W.D. Mich. Oct. 28, 2025) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999).  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  *Reno*, 525 U.S. at 482

(emphasis omitted)).  "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* at 482.

Again, Petitioner does not challenge the decision or action to commence proceedings against her nor does she contest the adjudication of those proceedings.  Petitioner also does not challenge the execution of a removal order, as one has not yet been entered.

Accordingly, Respondents first jurisdictional objection is considered **WAIVED** and the Court **ADOPTS** the Magistrate Judge's analysis of and conclusions regarding the Court's subject matter jurisdiction under § 1252(g).

### 2. § 1252(b)(9)

The Magistrate Judge concluded that this Court has jurisdiction under § 1252(b)(9) to review Petitioner's claims.  Respondents object to this conclusion, asserting that the Magistrate Judge construed § 1252(b)(9) too narrowly.  In lieu of objecting to this finding with specificity as required by *Aldrich*, Respondents again rely on a nearly identical recitation of arguments already considered by the Magistrate Judge.  Respondents only offered additions in support of their objection, including a mischaracterization of the Third Circuit's holding in *Khalil* and a citation to a factually inapposite decision from another court within this district.  (ECF # 19 pgs. 4-5).

Notwithstanding these deficiencies, the Court will consider the Respondents' objections.

### A. The R&R does not construe § 1252(b)(9) too narrowly.

Respondents push for an expansive interpretation of § 1252(b)(9) that not only lacks support in the statutory text, but conflicts with Supreme Court precedent.

The Court begins with the relevant text.  § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding

brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Respondents believe that Petitioner is challenging the basis on which she is detained, therefore § 1252(b)(9), taken with § 1252(a)(5), requires she raise her claims before the Sixth Circuit. To be sure, § 1252 governs "[j]udicial review of a final order of removal[.]" While § 1252(a)(5) makes the court of appeals "the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter," in this context, a "final order of removal" is a 'final order concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 579, 140 S. Ct. 1683, 207 L. Ed. 2d 111 (2020), quoting 8 U.S.C. § 1101(a)(47)(A). § 1252(a)(5) provides that a petition for review must be filed with the appropriate court of appeals as the "sole and exclusive means for judicial review of an order of removal." Thus, the "rulings that affect the validity of the final order of removal merge into the final order of removal for purposes of judicial review" under § 1252(b)(9)'s direct review consolidation provisions. Orders that do not affect the validity of the final order of removal do not merge into the final order of removal and are therefore not subject to § 1252(b)(9)'s limitations. *Nasrallah*, 590 U.S. at 982.

§ 1252(b)(9) addresses only those claims, i.e., "questions," that arise from a removal-related action or proceeding. The Supreme Court has rejected an "expansive interpretation of § 1252(b)(9)." *Jennings v. Rodriguez*, 583 U.S. 281, 292–94 (2018). As the Magistrate Judge explained, the Supreme Court has "described § 1252(b)(9) as a 'zipper clause' which "consolidate[d] 'judicial review' of immigration proceedings into one action in the court of appeals." *See INS v. St. Cyr*, 533 U.S. 289, 313 (2001). (ECF # 18, pg. 10-11). The provision is

10

designed to channel claims together for judicial review. *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186. (3d Cir. 2020).  Consequently, courts have found that it does not reach claims that are independent of, or wholly collateral to, a removal action or proceeding and therefore are not barred by Section 1252(b)(9).  *See Khalil v. President, United States*, 164 F.4th 259, 274 (3d Cir. 2026) (citing *E.O.H.C.*, 950 F.3d at 186.  (citing cases)).  The Supreme Court has made clear that "it applies only '[w]ith respect to review of an order of removal under subsection (a)(1).'"  (ECF # 18, pg. 10-11).  The "zipper clause" does not bar the Court's jurisdiction over Petitioner's claims, as it clearly applies to actions brought pursuant to the general habeas statute and thus cannot repeal that statute either in part or in whole.  (*Id.*)

While the act of detaining a noncitizen during removal could be said to arise from the removal proceedings, it does not necessarily follow that all claims arising from that detention can be said to arise from a removal-related action or proceeding.  *See Jennings,* 583 U.S. at 295 n.3. ("The question is not whether detention is an action taken to remove an alien but whether the legal questions in this case arise from such an action.  And for the reasons explained above, those legal questions are too remote from the actions taken to fall within the scope of § 1252(b)(9.)"). Detention-based claims that are one or more steps removed from the government's efforts to remove a person do not fall under § 1252(g).  *See id.* at 293; *see also Hamama v. Homan,* 912 F.3d 869, 877 (6th Cir. 2018) (recognizing that jurisdiction over detention-based claims is independent of jurisdiction over removal-based claims).

"[T]he *Jennings* plurality would let district courts adjudicate some, but not all, habeas challenges arising from actions taken before entry of a final order of removal."  *Khalil*, 164 F.4th at 278.  Specifically, the plurality concluded that § 1252(b)(9) did not strip jurisdiction over a challenge to INA provisions that allowed prolonged detention without a bond hearing, reasoning

that the "'questions of law and fact' raised . . . were not linked closely enough to the government's efforts to remove them."  *Khalil*, 164 F.4th at 277 (quoting *Jennings,* 583 U.S. at 293).   The plurality "strongly suggested" that § 1252(b)(9) "would strip jurisdiction over claims with closer connections, like 'challeng[es] [to] the decision to detain them in the first place or to seek removal,' challenges to 'any part of the process by which . . . removability will be determined,' and requests to 'review . . . an order of removal.'"  *Id*. at 277. (emphasis omitted) (quoting *Jennings,* 583 U.S. at 294).

Respondents' objection doubles down on the proposition that § 1252(b)(9) is triggered by continuing to rely on the concurring opinion in *Jennings*.  (ECF # 19 pg. 6).  However, both the Magistrate Judge and the plurality in *Jennings* explicitly rejected this contention, "The concurrence contends that 'detention is an "action taken . . . to remove" an alien' and that therefore 'even the narrowest reading of "arising from" must cover' the claims raised by respondents. We do not follow this logic."  *Jennings*, 583 U.S. at 319; (ECF # 18 pg. 11).

The Court disagrees with Respondents' belief that the Magistrate Judge's analysis is too narrow and finds their expansive interpretation of § 1252(b)(9) to be unsupported by the plain text of the statute and contradictory to the Supreme Court's plurality opinion in *Jennings*.  The Court further finds their application of § 1252(a)(5) to be unpersuasive.  Petitioner's arguments are related to the legality of her confinement, a matter distinct from any challenges to her removal or other immigration proceedings.  Therefore, jurisdiction is not barred by § 1252(b)(9).

### B. Respondents' use of *Khalil* and *Amya-Velis*.

Respondents suggest the Third Circuit's holding in *Khalil* illustrates that the Court lacks jurisdiction pursuant to § 1252(b)(9), because Petitioner's claim, "does not raise a now-or-never question, but a now-or-never harm."  (ECF #19 pg. 4).  "§ 1252(b)(9) bars subject matter

jurisdiction over habeas claims arising from actions to remove an alien, including those where the injury cannot be remedied after the fact – such as alleged illegal detention claims." (*Id*.).  "A now-or-never claim must raise legal or factual questions that a court of appeals will not later be able to review meaningfully on a petition for review; a claim must raise now-or-never questions, not now-or-never harms." (*Id*. pg. 5).

Upon the Court's actual review of *Khalil*, the Third Circuit found that Khalil could not rest jurisdiction on his detention claim because the challenge was, in substance, an attack on the government's underlying basis for removal and by extension, his detention. *See Khalil*, 164 F.4th.  The court reasoned that Khalil's arguments against his detention and his removal were identical, namely that the government's actions constituted impermissible retaliation and were premised on an unconstitutionally vague foreign policy rationale. *Id.*  The court further observed that certain claims may concern detention specifically and thus fall outside the category of "legal questions." *Id.*

The Court is troubled by Respondents' disingenuous use of *Khalil*.  While the Third Circuit held that Khalil could not rest § 1252(b)(9) jurisdiction on *his* detention claim, the decision did not, as Respondents suggest, "prohibit this Court from entertaining the habeas petition for illegal detention in this context." (ECF # 19 pg. 5).  Rather, the *Khalil* court expressly distinguished between detention-based claims that fall within § 1259(b)(9)'s scope and those, like Petitioner's here, that do not.  Unlike *Khalil*, Petitioner does not challenge the decision or the action to detain her, or challenge that her detention is retaliatory or punishment for political beliefs.  The sole commonality between the two cases is that both petitioners raise due process challenges to detention; beyond that, their claims are materially distinct and inapposite.

After misrepresenting *Khalil*, Respondents turn to *Amaya-Velis v. Raycraft*, 2026 U.S. Dist. LEXIS 6958, 2026 WL 100596 (N.D. Ohio Jan. 14, 2026), to propose that the Court should interpret § 1252(b)(9) in the same manner as a different court within this district.  (ECF #19 pg. 5).  The Court respectfully disagrees with that court's conclusion.  *Amaya-Velis* did not analyze *Jennings* or *Khalil*, two decisions the Court finds to be instructive in reaching its own conclusion.  Moreover, *Amaya-Velis* failed to account for several other lower court decisions that, relying on *Jennings*, determined § 1252(b)(9) does not bar a district court's review of analogous detention-based claims.  *E.g., Bartolon*, 2025 WL 3674604, at *6 (citing cases); *see also Khalil*, 164 F.4th at 276–79.

Accordingly, Respondents' second jurisdictional objection is **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's analysis of and conclusions regarding the Court's subject matter jurisdiction under § 1252(b)(9).

## B.   Waiver of Administrative Exhaustion

Respondents level no specific objections to the Magistrate Judge's determination that Petitioner is excused from administrative exhaustion.  Accordingly, they have waived the ability to raise this issue on appeal.  *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990) (failure to object to one issue in a magistrate's report precludes subsequently raising that issue on appeal, even if objections are filed on other issues).  In any event, the Court agrees with the Magistrate Judge's conclusion that administrative exhaustion would be futile.

Where, as here, no applicable statute or rule mandates administrative exhaustion, the decision whether to require exhaustion is within the district court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted).  "Exhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion

14

doctrine,' 'if the administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'" *Id.*  (ECF # 18 pg. 12-13.).  Even if the Court were to find that exhaustion is warranted, the Court could still choose to waive exhaustion when the "legal question is fit for resolution and delay means hardship*." Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (2000) (citation and internal quotation marks omitted).

The Court cannot imagine an act more aptly described as a "futile gesture" than requiring Petitioner to appeal the Immigration Court's denial of her bond hearing to the very agency that passed down that unequivocal directive.  *See Matter of Yajure Hurtado,* 29 I.&N. Dec. 216, 229 (BIA 2025).  Petitioner is one among what is likely thousands of petitions seeking relief as a direct consequence of the BIA's and ICE's abrupt interpretative shift.  It follows that requiring exhaustion in this case would neither promote judicial efficiency nor protect administrative authority.  It would merely postpone resolution of Petitioner's legal questions without any meaningful purpose.  The Court declines to impose such a hardship for hardship's sake.

Accordingly, the Court **ADOPTS** the Magistrate Judge's analysis of and conclusions regarding administrative exhaustion and waives Petitioner's requirement.

## C. Applicability of Detention Statutes 8 U.S.C. §§ 1225(b)(2) and 1226(a)

Because jurisdiction has been established and Petitioner's administrative exhaustion requirement has been waived, the Court now turns to the merits of the Petition.

The parties dispute whether Petitioner is subject to mandatory detention under § 1225(b)(2), or entitled to discretionary release on bond under § 1226(a).  The Magistrate Judge's analysis found that Respondents' contradictory conduct, coupled with their conclusory assertions

and conflated statutory interpretations, do not support their contention that Petitioner is subject to mandatory detention under § 1225(b)(2). (*See* ECF # 18).

Two pertinent statutory provisions govern the detention of noncitizens: 8 U.S.C. §§ 1225 and 1226. *See Jennings*, 538 U.S. at 296-306. § 1225 applies to "aliens seeking entry into the United States." *Id*. at 297. § 1226 applies to "aliens already present in the United States." *Id*. at 303. Putting these statutes together, it would appear that § 1226(a) provides a general rule, applying broadly to immigrants arrested and detained pending removal determinations, while § 1225(b)(2) provides a carveout to that rule. § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer.

Respondents object to this analysis and contend the Magistrate Judge erred in determining Petitioner was not "seeking admission," and therefore that § 1225(b)(2) does not apply. Respondents rest their objection on their own interpretation of the statute, maintaining, "the statute makes clear that an alien who is an 'applicant for admission' is necessarily 'seeking admission.'" (ECF # 19 pg. 7). Respondents dispute the Magistrate Judge's finding that they improperly conflated the statutory terms "applicant for admission" and "seeking admission." Yet, in support of this objection, Respondents persist in conflating these very terms throughout nearly three pages of their objection. (*See* ECF # 19).

Respondents' objection reflects a fundamental misunderstanding of long-settled principles of immigration law, which have been recognized[5] and reaffirmed for more than half a

---

[5] *See generally* Kyle Cheney, *Hundreds of Judges Reject Trump's Mandatory Detention Policy with No End in Sight*, POLITICO (Jan. 5, 2026), www.politico.com/news/2026/01/05/trump-administration-immigrants-mandatory-detention-00709494. (last visited March 9, 2026).

century.  Respondents rely on a flawed textual analysis that disregards the plain text and structure of the statute while substituting unsupported interpretation for established law to justify departing from controlling precedent.

### 1. Applicability of § 1225(b)(2)

The Court again begins with the relevant text.  Specifically, § 1225(b)(2)(A) provides:

> In the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.

On the reading of the plain language of the statute, the Court agrees with the Magistrate Judge's conclusion that § 1225(b)(2) does not apply to Petitioner.  *See Jimenez v. Quarterman*, 555 U.S. 113, 118, 12.S Ct. 681, 172 l. Ed. 2D 475 (2009) ("As with any question of statutory interpretation our analysis begins with the plain language of the statute.").  The statute clearly states what must be true for mandatory detention to be triggered: the alien must be: (1) "an applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *Kashranov v. Jamison*, 2025 U.S. Dist. LEXIS 224644, 2025 WL 3188399, at *6 (E.D. PA. Nov. 14, 2025).

Respondents' interpretation would render the term "seeking admission" entirely superfluous of "applicant for admission."  The Court will not presume that Congress intended its words to be redundant.  *See TRW Inc., 534 U.S. at 31* (directing courts to construe statutes as to not render any word superfluous).  If Congress intended "applicant for admission" and "seeking admission" to carry identical meaning, it would not have used both phrases within the same sentence. *Sumba v. Crowley*, No. 1:25-cv-13034, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms

17

in the same subparagraph—'applicant for admission' and 'an alien seeking admission'—somehow bear the same meaning even though they are (obviously) different terms.")

Respondents maintain that being an "applicant for admission" is thus a particular "way or manner" of seeking admission, such that any alien who qualifies as the former necessarily satisfies the latter.  (ECF #19 pg. 9).  This interpretation ignores Congress's deliberate choice to use the active term "seeking" in describing those immigrants covered by § 1225(b)(2). "Seeking" "implies action."  *Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, 2025 WL 2496379, at *6; s*ee also Sumba*, 2025 WL 3126512, at *4 ("a present participle stated in the progressive tense implies some ongoing, affirmative action.").  Therefore, mere passive presence within the United States, as in Petitioner's case, does not satisfy the statutory requirement of "seeking admission."[6]

Respondents support their position by characterizing "seeking admission" as a "term of art."  (ECF #19 pg. 9).  Congress defined "applicant for admission" as a term of art, whereas "seeking admission" is not so defined.  *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160, 138 S. Ct. 767, 200 L. Ed. 2d 15 (2018) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." (quotations and citation omitted)); *see also Buenrostro-Mendez v. Bondi*, 2026 U.S. App. LEXIS 3899, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting) ("Congress may define a word or phrase [like 'admission'] in a specialized way" but "absent such [a definition], those whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden

---

[6] Respondents argue that being "passive" is not a status under the INA.  The Court's reading differs from Respondents, by recognizing the class of noncitizens that did not lawfully enter the United States, subject to removal proceedings as a result, but who are nonetheless not seeking admission.  To be sure, the INA recognizes two classes of noncitizens who are not seeking admission, but that does not preclude the existence of other classes of noncitizens that do not fall under § 1225.  *See Padilla-Ugsha v. Ladwig, 2025 WL 3638007 LEXIS 258727, *15*

18

messages."(citing *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45, 145 S. Ct. 1284, 221 L. Ed. 2d 712 (2025))).

Unable to reconcile their far-reaching interpretation with the statute's actual text, Respondents suggest their analysis is supported by Supreme Court's decision in *Jennings* as held in *Lucero*.  The *Lucero* court used a single, isolated sentence from *Jennings* to suggest that the Supreme Court equated "seeking admission" with "applicant for admission" and therefore understood § 1225(b)(2) to encompass all unadmitted immigrants in the United States.  *Lucero v. Field Officer Dir. Of Enforcement and Removal Op., et al.*, Case No. 1:25-cv-823, 2025 WL 3718730 at *1 (S.D. Ohio Dec. 23, 2025), citing *Jennings* 583 U.S. at 297.  Read as a whole, however, *Jennings* does not construe § 1225(b) so broadly.  Instead, *Jennings* understands § 1225 to operate "at the Nation's borders and ports of entry" and to govern the "inspect[ion] [of immigrants] by immigration officers."  *Jennings*, 583 U.S. at 287.  Respondents' proposition that their cherry-picked reading of § 1225 "follows" Supreme Court precedent is misleading.

Respondents' arguments to justify their interpretation as to Petitioner only deepen the Court's concern.  Respondents dismiss their contrary past detention practices as irrelevant in light of the BIA's recent decision in *Matter of Yajure Hurtado*.  After criticizing the Magistrate Judge for relying on the NTA in his statutory analysis, Respondents nevertheless concede, "to be sure, the Government previously operated under a different understanding of § 1225(b)(2)(A)," under which noncitizens present in the United States who entered without admission instead were detained under § 1226(a) but now insist, "past practice does not justify disregard of clear statutory language."  (ECF #19 pg. 10).  The Court will not simply accept Respondents' newly asserted basis for Petitioner's detention, particularly where it is offered post hoc.  *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that, under

arbitrary and capricious review in the administrative law context, "[t]he basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

The Magistrate Judge noted that the NTA's issuing officer appears to have explicitly declined to designate Petitioner as an "arriving alien," the operative term used to define the scope of § 1225(b)(2)(A) in its implementing regulation.  8 C.F.R. § 235.3(c)(1).  ("Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible and who is placed in removal proceedings pursuant to § 1229(a) shall be detained in accordance with § 1225(b).)  Instead, Petitioner was classified "an alien present in the United States who has not been admitted or paroled," and then effectively paroled for approximately 18 months.  When the Magistrate Judge pressed Respondents to clarify whether Petitioner had, in fact, been paroled in 2024, they could not provide a clear answer, but confirmed she was not subjected to mandatory detention when initially apprehended.  (*See* ECF # 18).  Moreover, Petitioner's processing disposition on her I-213 "Record of Noncitizen" form reflects a status of "notice to appear released." (ECF # 1-5).

Respondents themselves appear to rely on the NTA to claim Petitioner's 2024 encounter with agents constituted an examination pursuant to § 1225, explaining "admission" under § 1225 requires not merely physical entry, but lawful entry after inspection by immigration authorities. (ECF # 19 pg. 8).  While immigration officers routinely examine (or "inspect") applicants for admission, *see* 8 U.S.C. § 1225(a)(3), they also enjoy broad authority to interrogate and, in some circumstances, temporarily detain non-citizens within the United States without a warrant.  *Id*.; *see* 8 U.S.C § 1357(a)(1)-(2).  Thus, not every encounter with an immigration officer necessarily

20

constitutes an examination under § 1225. Petitioner's NTA does not indicate that she was examined or detained under § 1225; rather, explicitly reflects that she was released.

If the Court does what Respondents urge and disregard the very forms upon which they themselves rely[7], Respondents still cannot square their rendition of § 1225, as to Petitioner. Even setting aside the record, the statutory framework itself undercuts their position. "With a few exceptions not relevant here, the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2). 8 U. S. C. § 1182(d)(5)(A). That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released." *See* A. Scalia & B. Garner, Reading Law 107 (2012) ("Negative-Implication Canon[:] The expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*)"). *Jennings*, 583 U.S. at 300.

These facts strongly indicate that prior to September 2025, Respondents treated Petitioner as subject to § 1226(a), not § 1225(b). This distinction reflects more than an officer's choice of paperwork or the Magistrate Judge's reliance on the NTA. If § 1225(b) truly governed Petitioner's status, Respondents offer no coherent explanation for why she was treated under § 1226(a) for more than a year following her initial apprehension. Indeed, the record is devoid of any reference to § 1225(b) in connection with her initial apprehension until Respondents' Return of Writ, at which point they claim § 1225(b) had always been the applicable statute. Taken together, the only logical conclusion is that Petitioner was not detained as a noncitizen "seeking

---

[7] Executive Office for Immigration Review: The Notice to Appear. (December 14, 2025). "The Notice to Appear, Form I-862, is the document that the Department of Homeland Security (DHS) provides to the immigration court to explain why you should be removed from the United States." https://www.justice.gov/eoir/notice-appear (last visited March 12, 2026).

admission" under § 1225(b), but rather as someone "already in the country" under § 1226(a). Respondents' reasoning to the contrary is, in a word, inexplicable.

Ironically, Respondents instruct the Court on how to conduct its statutory interpretation by pointing to other courts holdings that suggest, "a court must always interpret the statute 'as written,'" and "prior interpretation of § 1225(b)(2) was 'nontextual' and unsupported by any thorough, reasoned analysis." (*Id*.). Fortunately for Respondents, the Court *is* indeed bound to apply the statutes as they are written, not as Respondents prefer they were written. *Loper Bright Enters*., 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."). If Respondents wish to bring these statutes into closer alignment with their policy objectives, the proper mechanism is through Congress, not through unilateral administrative reinterpretations of the laws.

### 2. Applicability of § 1226

The Magistrate Judge determined that § 1226(a) is the applicable detention statute as applied to Petitioner. Respondents do not object to this finding but acknowledge § 1226 creates a "separate authority addressing the arrest, detention and release of aliens generally" as opposed to applicants for admission specifically. (ECF #19 pg. 7). Respondents explain § 1226 governs the detention of aliens who lawfully entered the country but overstay their visas or otherwise violate their admission terms or are later determined to have been properly admitted. (*Id*.)

Respondents' interpretation of § 1226, however, would render the statute's recent amendment (the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025)), superfluous. *Chavez v. Dir. of Detroit Field Office*, 2025 U.S. Dist. LEXIS 224173, 2025 WL 3187080, at *7 (N.D. Ohio Nov. 14, 2025). If, as Respondents contend, § 1226(a) only applied to admitted immigrants, Congress would have had no logical reason to carve out specific categories of

unadmitted immigrants through the Laken Riley Act. Conversely, if § 1225(b)(2) already mandated detention of all unadmitted immigrants, Congress's decision to separately require detention of a subset of those individuals would serve no purpose. *Id*. The Court declines to conclude that Congress passed the Laken Riley Act to merely "perform the same work" that was already covered by § 1225(b)(2)." *Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, 2025 WL 2496379, at *8 (citation omitted); *Barrera*, 2025 U.S. Dist. LEXIS 184356, 2025 WL 2690565, at *4 (citation omitted). Respondents' interpretation also runs contrary to the Supreme Court pronouncement in *Jennings* that § 1226 "applies to aliens already present in the United States," such as Petitioner. 583 U.S. at 289.

This issue is not one of first impression; courts nationwide have consistently resolved this issue in a similar manner. *See Barco Mercado*, 2025 U.S. Dist. LEXIS 232876, 2025 WL3295903, at *13 (listing 350 decisions that found for the habeas petitioner as of the date of that opinion). Because neither the Sixth Circuit, nor the Supreme Court has directly reached whether § 1225(b)(2) or § 1226(a) governs the detention of noncitizens like Petitioner, the Court joins the overwhelming majority of courts across the country[8] in concluding that § 1226(a) applies to Petitioner.

For all the aforementioned reasons, the Court declines to read words out of the statute, to render statutory language superfluous, to ignore Respondents' contradictory behavior or to disregard Supreme Court precedent and long-standing principles of immigration law, merely to conform the statute's plain meaning to Respondents' policy preferences.

---

[8] The Court acknowledges that it has taken the unusual step of citing news articles throughout this Order, a practice other courts have done under these circumstances. Respondents' failure to address the overwhelming body of contrary authority compelled the Court to look outside the record for context. To be clear, the Court did not rely on any of these articles in reaching its conclusions, does not take any of the allegations in those articles as fact or law and takes no judicial notice of their contents. The limited purpose of referencing these sources is to illustrate that Respondents ask the Court to render a decision utterly disconnected from reality, as though hundreds of other judicial orders do not exist.

Accordingly, Respondents' objections are **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's analysis of and conclusion that Petitioner is subject to detention under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b).  As such, Petitioner's continued detention without a bond hearing is unlawful and she is entitled to habeas relief.

### D.  Due Process

Having determined that Petitioner's detention is discretionary rather than mandatory, the Magistrate Judge concluded that Petitioner's continued mandatory detention without a bond hearing is a violation of her right to due process guaranteed by the Fifth Amendment. Respondents did not address the due process claims in their Return to Writ, nor did they level a specific objection to the Magistrate Judge's due process analysis.  Instead, Respondents assert, "Respondent clearly set forth the argument that Petitioner was properly detained under statute and Supreme Court precedent and it was error for the R&R to reject that position finding that the Due Process Clause was violated by continued detention."  (ECF # 19 pg. 11).  The Court once more points to the standards governing objections to R&R's.  *See Aldrich*, 327 F. Supp. 2d at 747-748.  Respondents' "objection" is vague, general and conclusory.  Therefore, the Court deems it waived.

Upon review, the Court finds that Magistrate Judge did not err in determining that Respondents forfeited an opposition to Petitioner's due process claim, as "due process" appears only once in their Return of Writ – in an attached exhibit of another court's decision.  (ECF #16-2 pg. 23).  The Court further agrees with the Magistrate Judge's conclusion that, because Petitioner's detention is governed by § 1226(a)'s discretionary bond framework and Respondents' misapplication of § 1225(b) to deny her appeal of her bond determination, violates her due process rights.  (ECF # 18 pg. 25).  This decision is consistent with those of other courts. *See,*

24

*e.g., Casio-Mejia*, 2025 U.S. Dist. LEXIS 207165, 2025 WL 2976737, at *9; *Garcia v. Raycraft*, No. 1:25-cv-1281, 2025 WL 3122800, at *7 (W.D. Mich. Nov. 7, 2025)*; *Godinez-Lopez v. Ladwig*, No. 2:25-cv-2962, 2025 WL 3047889, at *6 (W.D. Tenn. Oct. 31, 2025).

"Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the very liberty that the Due Process Clause protects." *Zadvydas*, 533 U.S. 678 at 690.  The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 605 U.S. 91, 145 S. Ct. 1364, 1367, 221 L. Ed. 2d 765 (2025).  Noncitizens, such as Petitioner, are therefore entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 U.S. App. LEXIS 1407, 2023 WL 246837, at *3 (6th Cir. Jan. 18. 2023).  The "suggestion that government agents may sweep up any person they wish, for [no] reason [whatsoever] . . . so long as the person will, at some unknown point in time, be allowed to ask some other official for his or her release offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (citing Velasco Lopez, 978 F.3d at 851-52; Valdez, 2025 WL 1707737, at *3-4).

The Court cannot condone a process that turns a mandatory court appearance into a bait-and-switch under the guise of compliance.  When attending a required immigration hearing becomes the trigger for mandatory detention after being effectively paroled for 18 months, Respondents transform compliance into punishment.

Accordingly, Respondents' objection is **WAIVED** and the Court **ADOPTS** the Magistrate Judge's analysis of and conclusions regarding the violation of Petitioner's Fifth Amendment right to due process.

25

### IV. CONCLUSION

For reasons stated above, Respondents' objections have been either **OVERRULED** or **WAIVED** and the R&R (ECF # 19) is **ADOPTED**, including as to the Court's ultimate resolution of the Petition.  Petitioner's Writ of Habeas Corpus is **GRANTED**.

Respondents are ordered to either afford Petitioner the statutory process required under § 1226(a), which includes a bond hearing, or release her from custody within no more than five business days of this order.  The Court further orders Respondents to file a status report to certify compliance with this Order.  The status report shall inform the Court whether Petitioner was released from custody, if/when a bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

The Court will retain jurisdiction to ensure that Respondents comply with this Order.

**IT IS SO ORDERED.**

/s Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: March 13, 2026**